IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KG, by and through her mother
and next friend, CHRISTINE C.,

    Plaintiff,

v.                CIV 12-1209 KBM/LFG

SANTA FE PUBLIC SCHOOL DISTRICT,
BOARD OF EDUCATION FOR THE
SANTA FE PUBLIC SCHOOL DISTRICT,
BOBBIE GUTIERREZ, in her official capacity as
the former superintendent of Santa Fe Public Schools,
TOM SULLIVAN, in his official capacity as the
former interim superintendent of Santa Fe Public Schools,
JOEL BOYD, in his official capacity as superintendent
of Santa Fe Public Schools, FELICIA SENA, in her
individual and official capacity, and
KIMBERLY SEYMOUR, in her individual and
official capacity,

    Defendants.

# <u>MEMORANDUM OPINION & ORDER</u>

   THIS MATTER is before the Court on Defendants' Motion to Dismiss *(Doc. 9).*
Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to
me serving as the presiding judge and entering final judgment.  *See Docs. 11, 17, 18.*
The Court, having considered the parties' briefs and cited authorities and having heard
the arguments of counsel on May 10, 2013, will grant the motion in part and deny the
motion in part.

# I.  Factual & Procedural Background

KG suffers from a brain disorder that causes cognitive and physical impairments. She attends elementary school and receives special education services pursuant to the Individuals with Disabilities Education Act ("IDEA"),  20 U.S.C. §§ 1400 et seq.   *See, e.g., Doc. 1-2* at 3-4 (¶¶ 9-15) ("*Complaint*"); *Doc. 9-1* at 2 (¶¶ 8-10) ("*Hearing Request*").  When a dispute arose over the nature and extent of those services, KG's mother requested a due process hearing through a letter from her attorney in August 2012.  *Hearing Request* at 1.  KG's mother sought ten instances of specific relief for the failures that she asserted violated KG's "rights under the IDEA and denied her of a free appropriate education."  *Id.* at 8; *see also id.* at 9.  As part of her "proposed resolution," counsel concluded by noting KG's mother "will seek damages for [her child's] physical injuries, emotional distress, loss of education opportunity and permanent harm and attorney's fees and costs in an appropriate forum."  *Id.* at 9.

The administrative proceedings resulted in an agreement in September 2012. The District essentially complied with all of the mother's demands, and also paid her attorney's fees.  *See Doc. 9-2* at 1-14 ("*Agreement*").  The parties "acknowledge[d] and represent[ed] that [their agreement] is a compromise in resolution of disputed IDEA claims," and KG's mother agreed to release "any and all claims or causes of action for violation of . . . IDEA." She expressly, however, did "not agree or . . . release any claims or causes of action arising under any laws other than the IDEA."  *Id.* at 15.

In October 2012, KG's mother filed suit in the First Judicial District Court of New Mexico.  Her state complaint seeks nominal and compensatory damages and attorney fees for violations of state and federal law, specifically:  the New Mexico Tort Claims Act

waiver provisions for operating vehicles and public schools in a dangerous and unsafe

manner, citing to N.M. STAT. ANN. §§ 41-4-4, 41-4-6; a federal civil rights statute, 42

U.S.C. § 1983; the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq.;

and section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a).   The factual background

and failures by Defendants that counsel detailed in this Complaint are identical in all

substantive respects to those she asserted in the Hearing Request letter.  *Compare*

*Complaint* at 3-16, *with Hearing Request* at 1-9.  Plaintiff's Complaint does not pursue a

claim for relief under the IDEA.

Defendants removed the action to this Court in November 2012, and immediately

filed a motion to dismiss all of Plaintiff's claims under FED. R. CIV. P. 12(b)(1) and

12(b)(6).  *See Docs. 1, 9.*  Because Defendants' motion raises the issue of qualified

immunity, Defendants were successful in securing a stay of discovery pending

resolution of this motion.  *See Docs. 10, 12.*

## II.  Analysis

### A.  No Conversion To Summary Judgment Motion

Defendants have attached copies of the Hearing Letter and Agreement to their

motion to dismiss.  A preliminary, but unaddressed, issue arises as to whether these

documents convert Defendants' motion to one for summary judgment.  The Federal

Rules mandate conversion when a party is moving for dismissal for failure to state a

claim or on the pleadings:

> (d) Result of Presenting Matters Outside the Pleadings.  If,
> on a motion under Rule 12(b)(6) or 12(c), matters outside
> the pleadings are presented to and not excluded by the
> court, the motion must be treated as one for summary
> judgment under Rule 56. All parties must be given a

> reasonable opportunity to present all the material that is
> pertinent to the motion.

FED. R. CIV. P. 12(d).

Conversely, for an assertion of lack of subject matter jurisdiction under Rule

12(b)(1), the Court has "wide discretion to allow affidavits [or] other documents . . . to

resolve disputed jurisdictional facts."  Resolution of such facts by reference to matters

outside the pleadings does not convert dismissal to summary judgment unless the

"jurisdictional question is intertwined with the merits of the case," such that "subject

matter jurisdiction is dependent on the same statute which provides the substantive

claim in the case."  *Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir. 1995); *see also,*

*e.g., Garcia v. United States,* No. CIV 08–0295 JB/WDS, 2009 WL 1300938, at *6

(D.N.M. Mar. 30, 2009) (Court concluded merits of FTCA claims were "bound up" with

the jurisdictional question that included exhaustion of tribal remedies).

Plaintiff does not object to the Court considering the documents.  Indeed, her

Complaint and Response reference facts from the proceedings that are essential to

resolution of the motion.  *See Complaint* at 12 (¶61 – "Plaintiff filed a special education

due process hearing complaint pursuant to . . . IDEA [which] was resolved through

mediation and the due process hearing complaint was dismissed.  Plaintiff has

exhausted her administrative remedies.").  As Plaintiff suffers no disadvantage, and

Defendants' counsel stated at the hearing they had no objections, the Court will address

the motion as one to dismiss.

### B.  Recovery Of Damages Under The Rehabilitation Act And ADA

The IDEA is the primary means of assuring a free appropriate education for

disabled children, and the statute afforded this particular Plaintiff relief for her child and

paid her attorney's fees.  Defendants argue that it therefore is improper for Plaintiff and her attorney to now bring suit to reap additional relief by other means based on the same allegations.  These equitable, policy, and fiscal rationales may have practical and emotional appeal, but they do not accurately state the law this Court is bound to apply. Congress amended the IDEA specifically for the purpose of rejecting that position. Defendants' original citation to the IDEA statute, federal regulations, and binding authority recognize this, and their reply concedes the same.  *See Doc. 9* at 17; *Doc. 23* at 6.

A very recent decision by a court in this Circuit discusses the interrelationship between the three statutes.  *See Kimble ex rel. B.K. v. Douglas Cnty. Sch. Dist. RE-1,* ___ F. Supp. 2d ___, ___, 2013 WL 659109 (D. Colo. Feb. 25, 2013).  The IDEA, Rehabilitation Act and ADA all apply to disabled children and to the elementary school setting.  *See id.* at **3-5.  Courts consider the Rehabilitation Act and ADA together ("RA/ADA") in a single analysis because the two involve identical substantive standards. *See id.* at *5 (citing *Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Sch.,* 565 F.3d 1232, 1245 (10th Cir. 2009), and *Urban ex rel. Urban v. Jefferson Cnty. Sch. Dist. R–1,* 89 F.3d 720, 728 (10th Cir. 1996)).

The reach of the RA/ADA is broader and less stringent than the IDEA.  The RA/ADA requires schools to give all students with disabilities "equal access" to ensure those children receive a free and appropriate public education.  The IDEA applies to a narrower subset of disabled children and requires specific services consistent with the individualized program designed for that particular child.  *See Kimble,* ___ F. Supp. 2d at ___, 2013 WL at **4-5.  As one court put it, and as Plaintiff's counsel so ably argued

at the hearing, "[Section 504] is a bludgeon to the IDEA's stiletto, protecting a broader swath of the population without describing a precise manner of compliance."   *Weber v. Cranston Pub. Sch. Comm.,* 245 F. Supp. 2d 401, 406 (D.R.I. 2003)).

Thus, while the statutes overlap substantially, they protect different interests.

> We further note that while Section 504 and the IDEA both provide certain forms of relief for individuals with disabilities, they have separate purposes.  Section 504 provides relief from discrimination, *. . . .* but the IDEA provides relief from inappropriate educational placement decisions, regardless of discrimination, *. . . .*  "Concomitant to these distinct purposes are separate statutory definitions of what it means to be disabled or handicapped."  *Bowers v. Nat'l Collegiate Athletic Ass'n,* 563 F. Supp. 2d 508, 533 (D.N.J. 2008). These definitions may substantially overlap, but we decline to conflate them entirely.

*Ellenberg v. N.M. Military Institute,* 572 F.3d 815, 821-22 (10th Cir. 2009) ("*Ellenberg II*"). Defendants' argument that the doctrines of res judicata and collateral estoppel preclude Plaintiff from suing under the RA/ADA is simply misplaced.

### C.  *Plaintiff Exhausted Her IDEA Remedies*

As seen above, the IDEA and RA/ADA statutes operate independently.  But prior to filing suit under either of these statutes, the plaintiff must exhaust IDEA administrative remedies.  *Ellenberg v. N.M. Military Institute*, 478 F.3d 1262, 1279-80 (10th Cir. 2007) ("*Ellenberg I*") ("When a plaintiff pursues a claim under the ADA or other law that protects the rights of disabled children, the IDEA "requires her to first exhaust its administrative procedures and remedies prior to commencing her ADA suit [or suit under other federal law] if she is ' *seeking relief that is also available under'* the IDEA.", quoting *Padilla ex rel. Padilla*, 233 F.3d 1268, 1274 (10th Cir. 2000)).

Specifically, the IDEA preservation of rights/exhaustion requirement provides:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies under the Constitution, the [ADA] or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(*l*); *see also* 34 C.F.R. § 300.516(e) (same).  Subsection (f) affords the complainant the opportunity for an impartial due process hearing, and requires a written and binding agreement whenever the matter is resolved by settlement.  *See* 20 U.S.C. §§ 1415(f)(1)(A), (B)(iii).  Subsection (g) governs appeals, and permits "any party aggrieved by the findings and decision rendered in such hearing" to appeal to the "State educational agency."  *Id.,* § 1415(g).

Defendants argue that exhaustion is incomplete because Plaintiff did not "appeal" from the administrative hearing level.  *See Doc. 23* at 7.  This argument makes no sense factually or legally.  Because the parties settled the IDEA claims at the administrative level, as is authorized by statute and in the manner required by statute, there was no need to appeal because neither party was "aggrieved."  Plaintiff received the relief that she sought and was available to her under the IDEA.  Because the IDEA provides no opportunity to recover money damages for emotional and physical injuries, an appeal to "preserve" those claims would be nothing more than an empty step and unnecessary expenditure of resources for all concerned.

Futility is a well-settled and recognized exception to exhaustion requirements, and the law is no different in the IDEA context.  *See, e.g., Ellenberg I,* 478 F.3d at 1276 ("Exhaustion is also not required if pursuing administrative remedies would be futile").

Moreover, it should come as no surprise to Defendants that this lawsuit was filed. Plaintiff expressly reserved the right to proceed with litigation to recover for non-IDEA claims, the agreement memorialized that term of the settlement, and Defendants and/or their district signed it.

Simply put, having sought the relief she could garner from the administrative process, Plaintiff exhausted as required.  Thus, the motion to dismiss the RA/ADA claims for lack of subject matter jurisdiction lacks merit.

### D.  Availability of Damages for "IDEA-related Services" Under RA/ADA

Defendants posit that this Court should dismiss all of Plaintiff's claims under the RA/ADA because the Tenth Circuit "has not addressed" whether compensatory damages are available in a subsequent actions "for IDEA-related services."  *See Doc. 23* at 12-13.  The attempt to characterize this suit as "IDEA-related" to preclude recovery of monetary damages improperly conflates the claims brought in this action.

Plaintiff seeks nominal and compensatory damages for the physical and emotional injuries KG suffered allegedly because of the failure to properly design and implement her Individualized Education Plan ("IEP").  *See Complaint* at 5-7, 10-11 (¶¶ 19-26, 28-30, 53-55) (knee surgeries received on a slide tunnel; a broken femur after another student caused her to fall; confined  in her wheelchair on the bus; and injuries when the bus driver temporarily fled the scene after crashing the bus into a car at the home of KG's aunt).

Defendants recognize that these kinds of damages are not recoverable during administrative proceedings because they have cited to the *Padilla* decision.  There, the Tenth Circuit stated:

> ***Plaintiff seeks damages solely to redress the fractured skull and other physical injuries she suffered allegedly as a result of the school district's and board of education's purported ADA violations.  Plaintiff makes no complaints regarding her current educational situation.***  Indeed, she expressly attests that her new school "meets her educational needs" and that she presently receives "the full benefits of a free and appropriate education in an integrated, least restrictive educational environment."  ***Under these narrow circumstances, we fail to see how the IDEA's administrative remedies, oriented as they are to providing prospective educational benefits, could possibly begin to assuage Plaintiff's severe physical, and completely non-educational, injuries. . . . [E]ven if damages are available under the IDEA they should be awarded in civil actions, not in administrative hearings.***

*Padilla ex rel. Padilla v. School Dist. No. 1 in the City & County of Denver, Colorado,* 233 F.3d 1268, 1274-75 (10th Cir. 2000) (emphasis added) (citations omitted).  Indeed, that is precisely why the *Padilla* panel held that exhaustion would be futile.  *Id.* at 1275 ("exhaustion was unnecessary because, so far as we can tell, Plaintiff's ADA claim is not seeking 'relief that is also available' under the IDEA.").

### E.  Plaintiff States a Viable RA/ADA Claim

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Section 504 of the Rehabilitation Act provides, in relevant part:

> (a) Promulgation of rules and regulations
>
> No otherwise qualified individual with a disability in the United States, as defined in [29 U.S.C. §] 705(20) . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to

> discrimination under any program or activity receiving Federal financial assistance . . .
>
> (b) "Program or activity" defined
>
> For the purposes of this section, the term "program or activity" means all of the operations of –
>
>  (2)(A) a college, university, or . . .
>
>> (B) a local educational agency (as defined in section 7801 of Title 20) . . .

29 U.S.C. §§ 794(a)-(b).  "The term 'local educational agency' means a public board of education or other public authority legally constituted within a State . . . to perform a service function for public elementary schools."  20 U.S.C. § 7801(26)(A).

The parties do not dispute that, to make out a prima facie case of discrimination for her RA/ADA claim, Plaintiff must show that:  (1) KG is disabled; [1] (2) she is "otherwise qualified" to participate in a "program;" (3) the program receives federal assistance; and (4) she was discriminated against based on her disabilities.  *Johnson ex rel. Johnson v. Thompson,* 971 F.2d 1487, 1482 (10th Cir. 1992).  Defendants concede that KG is disabled and there is apparently no dispute that the District receives federal funds.  Therefore, only the second and fourth prongs of the inquiry are at issue here.

---

[1] As applicable to KG, "individual with a disability" means a person with a "physical or mental impairment that substantially limits one or more [of their] major life activities."  *See* 29 U.S.C. § 705(2)(B); 42 U.S.C. § 12102(1).  Her "eligibility for special education and having an individualized education program under the IDEA" demonstrates that she has a "disability" but not that her disability is one that "*necessarily* . . . 'substantially limits' the major life activity of learning."  *Ellenberg II,* 572 F.3d at 822.  "As a matter of law, therefore," she could not "rely on the IDEA alone to make her prima facie discrimination claim under Section 504" and "[i]nstead . . . must offer evidence . . . showing her disability is substantial in the context of the major life activity as a whole."  *Id.*  It appears that KG's conditions satisfy the "major life activity" requirement due to her restrictions in learning and ambulating.  *See Complaint* at ¶¶ 11, 13, 14 & 15).

### (1) "Otherwise Qualified" Prong.

To be "otherwise qualified" under the Rehabilitation Act, KG must "meet all of [the] program's requirements *in spite of* [her] handicap." *SE. Comm. College. v. Davis,* 442 U.S. 397, 406 (1979) (emphasis added).

Defendants rely on two Tenth Circuit decisions which hold that if one is entitled to services due to a handicap, then one also cannot be "otherwise" qualified for the services "in spite of" their handicap.  Unlike the situation here, however, the cases cited by Defendants involve benefits *exclusively* available to the disabled.  *See Johnson,* 971 F.2d at 1494 ("'one would not ordinarily think of a newborn infant suffering from multiple birth defects as being 'otherwise qualified' to have corrective surgery performed.'") (quoting *United States v. University Hospital, State University of New York at Stony Brook,* 729 F.2d 144 (2d Cir. 1984); *see also Baumeister v. N.M. Comm'n for the Blind,* 425 F. Supp. 2d 1250, 1265-66 (D.N.M. 2006) ("Defendants have a statutory duty to provide vocational training and related services to blind persons; 'Plaintiffs are entitled to such services *because* they are blind.'").

Defendants therefore completely miss the mark when they argue that KG cannot be considered "otherwise qualified" under the Rehabilitation Act because it is her disability which entitles her to the "special education" benefits.  As Plaintiff notes,

> special education is *not* the benefit sought. Rather, special education is a means to an end – the end is access to a public school education.  Special education and other reasonable accommodations are necessary to allow KG to access a public school education.   Thus, Plaintiff's claim for denial of reasonable accommodation is much more analogous to *Chaffin v. Kansas State Fair Board*, 348 F. 3d 850 (10th Cir. 2003), wherein disabled residents of Kansas sought access to the State Fair, and complained that handicapped seating at the Fair was woefully inadequate to

> allow them reasonable access to the benefits and services otherwise available at the Fair.  Had Kansas borrowed from Defendants' argument in this case, it might have suggested that the plaintiffs could not complain about inadequate handicapped seating because they were only allowed to sit there because they were handicapped.

*Doc. 21* at 18 (emphasis added).  The RA/ADA assures reasonable accommodations necessary to participation in services, such as the ***guaranteed <u>public</u> education*** at issue here, that are also available to non-disabled citizens.

 *Ellenberg II* provides further illumination.  *Ellenberg II* specifically addressed the initial elements of the prima facie case in the context of an IDEA student who bought RA/ADA claims.  There, the court considered whether a student's mere IDEA eligibility automatically "qualified" the student under the RA/ADA and held it does not.  Instead, the Tenth Circuit  looked to the regulation it deemed controlling in determining whether the plaintiff stated a prima facie <u>RA/ADA</u> claim:

> (*l*) Qualified handicapped person means: . . .
>
> (2) With respect to public preschool elementary, secondary, or adult educational services, a handicapped person (i) of an age during which nonhandicapped persons are provided such services, (ii) of any age during which it is mandatory under state law to provide such services to handicapped persons, or (iii) to whom a state is required to provide a free appropriate public education under section 612 of the Education of the Handicapped Act.

34 C.F.R. § 104.3 (Westlaw, amended Nov. 13, 2000, and current through Feb. 21, 2013).  Thus, ***age*** is the dispositive factor for finding students to be "otherwise qualified"

for attending public elementary schools, and Defendant's argument that KG is not "otherwise qualified" lacks merit.[2]

### (2)  Discrimination Element.

Although the circuits remain split to some degree on the RA/ADA discrimination element as it relates to the IDEA,[3] the Tenth Circuit holds that denial of a free, appropriate public education alone is not sufficient to support a Rehabilitation Act or ADA claim.  *See Miller ex rel. S.M. v. Bd. of Educ. of the Albuquerque Pub. Sch.,* 565 F.3d 1232, 1246 (10th Cir. 2009) ("the IDEA and [the Rehabilitation Act] differ, and a denial [of FAPE] under the IDEA does not ineluctably establish a violation of [the Rehabilitation Act]").  Instead, Plaintiff must show that the program discriminated against her.  *Id.* ("The mere fact that complying with the IDEA is *sufficient* to disprove educational discrimination does not mean that every violation of the IDEA necessarily *proves* a discrimination claim.") (emphasis in original).

---

[2]  *See Centennial Sch. Dist. v. S.D. ex rel. Daniel,* Civil Action No. 10–CV–4129, 2011 WL 2441297, at *3 (E.D. Pa. Jun. 17, 2011) ("[f]or disabled public school children, age is the only requirement to qualify for Section 504 protection").
Here Defendants' logic confuses the age requirement with the markedly different "otherwise qualified" requirements set forth in the regulations governing **private** schools or **higher education** institutions.  *See Hogan v. Ogden,* No. CV-06-5078-EFS, 2008 WL 2954245, at *7 (E.D. Wash. Jul. 30, 2008) ("With respect to higher education, qualified is a person who meets the academic and technical standards requisite to . . . participat[e] in the . . . education program or activity.  34 C.F.R. 104.3(l)(3).") (internal quotations omitted).

[3]  The Third Circuit and Ninth Circuits hold that failing to accommodate handicapped elementary students (a "Part B" IDEA violation) by definition also violates the RA/ADA.   *See Mark H. v. Hamamoto,* 620 F.3d 1090, 1097 (9th Cir. 2010); *Andrew M. v. Del. Cnty. Office of Mental Health and Mental Retardation,* 490 F.3d 337, 350 (3rd Cir. 2007) (*Chambers v. Sch. Dist. of Philadelphia Bd. of Educ.,* 827 F. Supp. 2d 409, 423-24 (E.D. Pa. 2011) ("Although the Third Circuit Court of Appeals has yet to address whether intentional discrimination is required to be eligible for compensatory damages under the ADA or § 504, all other circuit courts to have considered the issue have held unambiguously that compensatory damages are unavailable absent a showing of intentional discrimination") (citing 1st, 2nd, 4th, 5th, 7th, 8th, 9th, 10th, and 11th Circuits).

Defendants maintain that denial of IDEA services is not actionable under the RA/ADA,[4] and that Plaintiff fails to sufficiently allege facts that amount to discrimination, much less deliberate indifference.  *See Doc. 23* at 13-14.  Yet the Complaint expressly alleges *intentional* discrimination and packs the background with facts to show the same.  For example, she alleges that Defendants:

- knew KG needed constant supervision and agreed to provide it, yet did not develop a safety plan or train personnel to provide the supervision, which resulted in KG suffering a dislocated kneecap and knee surgeries after playing unattended on an unbarricaded slide tunnel, and resulted in KG suffering a broken femur and surgeries after another unsupervised handicapped student knocked her down;

- provided no services whatsoever while KG was hospitalized and homebound recovering from her surgeries;

- did not properly address her mobility and supervision needs after returning to school in a full leg cast and wheelchair after her respective surgeries;

- reduced and altogether denied physical therapy and speech and language services during school hours, resulting in KG missing school to attend private physical therapy sessions and delaying development of speech and language skills;

- assigned a male, rather than the requested female, assistant to assist KG with use of the bathroom, resulting in the attendant waiting outside rather than assisting as needed;

- allowed a bus driver to continue, despite advisement to the contrary, to transport KG in her wheelchair on the bus, rather than assisting her out of the wheelchair and belting her in a seat;

---

[4]  On the other hand, "complying with the IDEA is sufficient to disprove educational discrimination."  *Miller,* 565 F.3d at 1246.  The administrative proceedings here did not definitively resolve the question of compliance.  While the District agreed to a number of measures to settle the matter and did pay attorney fees, the parties' agreement specifically provides that it "shall not be construed as an admission of liability or of any wrongful act or omission by any party, such liability and wrongdoing being expressly denied by [the District]."  *Agreement* at 15 (¶ 21).  .

- failed to inform KG's mother that the bus driver hit a car where KG was to be dropped off and instead of stopping, recklessly fled the scene with KG and other disabled students in tow; this driver eventually returned and dropped off KG, who then reported the accident to her family and was subjected to a police interview; and

- knew or reasonably should have known of all of these incidents and failed to act.

*See Complaint* at 4-13.  Defendants contend that these allegations could show only that they "provided services that were merely inadequate to Plaintiff's expectations." *See Doc. 23* at 14.

Plaintiff counters, and I agree, that these multiple allegations, if proven, could support a finding of deliberate indifference towards making reasonable accommodations (such as those in an appropriately designed and implemented IEP) to keep KG safe and thereby provide her with meaningful access to a public education.  Indeed, a District's continuing "negative attitude" toward complying with disability laws may support a finding of deliberate indifference sufficient to state an actionable claim under the RA/ADA.  *See id.* at 21-22 *Swenson v. Lincoln Cnty. Sch. Dist. No. 2,* 260 F. Supp. 2d 1136, 1146 (D. Wyo. 2003) (summary judgment denied because of evidence that "School District had a negative attitude towards ADA compliance, and that as a result of this attitude, every school day was a struggle for Plaintiff.").[5]  Thus, Plaintiff states a viable claim for discrimination under the RA/ADA.

---

[5]  Moreover, in a recent decision that encompasses the Rehabilitation Act, the Tenth Circuit reviewed the different methods of proving discrimination (direct, inferential, disparate impact), and observed that a claim "for reasonable accommodation is yet a different sort of animal.  It does not require the plaintiff to prove that the challenged policy intended to discriminate or that in effect it works systematically to exclude the disabled." *Cinnamon Hills Youth Crisis Cntr., Inc. v. Saint George City,* 685 F.3d 917, 922-23 (10th Cir. 2012).  The Tenth Circuit mentioned that the parties only briefed accommodation in light of the Fair Housing Act claim, and that "[i]f the RA or the ADA

### F.  Compensatory Damages under the RA/ADA

To recover compensatory damages under the RA/ADA, Plaintiff must also show that the District's discrimination was "intentional."  This does not require proof of "personal ill will or animosity toward the disabled person" and "can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights."  *Barber,* 562 F.3d at 1228-29 (internal quotations and citations omitted).

> The test for deliberate indifference in the context of intentional discrimination [consists of] two prongs:   (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that . . . likelihood. . . .
>
> Turning to the level of intent required to satisfy the "failure to act" prong of the deliberate indifference test, a
>
> > failure to act [is] a result of conduct that is more than negligent, and involves an element of deliberateness.  Under the second element, a public entity does not "act" by proffering just any accommodation:   it must consider the particular individual's need when conducting its

---

embrace a different standard than the FHA, no one has suggested it to us," and "decline[d] to address the issue."  *Id.* at 924, n.4.

The Tenth Circuit has also stated that the discrimination prong of the prima facie case can be met where  "well-pled allegations" establish that the plaintiff was not provided with "meaningful access to the benefit" that is offered.  *Cohon ex rel. Bass v. N.M. Dept. of Health,* 646 F.3d 717, 726 (10th Cir. 2011); *see also Barber ex rel. Barber v. Colo. Dept. of Revenue,* 562 F.3d 1222, 1229 (10th Cir. 2009) ("§ 504 is intended to ensure that 'an otherwise qualified handicapped individual [is] provided with meaningful access to the benefit that the grantee offers.'" . . . "[T]o assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made.'") (quoting *Alexander v. Choate,* 469 U.S. 287, 301 (1985)).  Likewise, "[u]nder the ADA, discrimination includes 'not making reasonable accommodations *to the known physical or mental limitations* of an otherwise qualified individual with a disability.'" *Dickman v. Lahood,* No. 11–2523–JTM, 2012 WL 4442644, at * 5 (D. Kan. Sept. 26, 2012) (emphasis original).

investigation into what accommodations are reasonable.

*Id.* at 1229 (internal quotations and citations omitted).  As noted above, Plaintiff's allegations set forth facts that could support both prongs – knowledge of the likely harm to KG in the absence of reasonable accommodations to her and a deliberate failure to act to provide those accommodations.

### G.  The Procedural Due Process Claims brought Pursuant to § 1983

Plaintiff also brings procedural due process claims pursuant to 42 U.S.C. §1983. *See Complaint* at ¶ 94 (asserting that KG has a "protected liberty and property interest in her public school education and the wide array of benefits and services that should have been made available to her").  Plaintiff contends that KG's constitutionally-recognized property interest in an appropriate public education was violated in two ways:  (1) by the ongoing practice of denying promised services to her while at school without any notice; and (2) by the failure to provide homebound services or supplemental instruction to KG when she was homebound and absent for several months at a time while recovering from her injuries and surgery.  *See Complaint* at 18-19 (¶¶ 95, 97-99).

Plaintiff further contends that, over the course of two years, District "policymakers" and "supervisors" were deliberately indifferent as to personnel training, had "notice" of a pattern of denial of benefits, through their course of conduct established a "de facto" policy of denying KG of her due process rights, and delegated their policymaking authority to unqualified and untrained staff.  *See id.* at 18-20.  She further alleges that the District failed to give KG pre- or post-deprivation notice and an opportunity to be heard  before it denied her services.  *See id.* at 20-21 (¶¶ 104-105).

### (1)  Identifying the Protected Right at Issue

In general, 42 U.S.C. § 1983 permits an action against an individual or

municipality to recover damages for violations of rights secured by the federal

Constitution or federal statutes.  Such individual rights created by federal statutes "there

is only a rebuttable presumption that the right is enforceable under § 1983."  *Blessing v.*

*Freestone,* 520 U.S. 329, 340-41 (1997) (citing *Maine v. Thiboutot,* 338 U.S. 1 (1980)).

Of import here,

> [i]n *Goss v. Lopez*, the Supreme Court held that school
> officials must provide procedural due process protections to
> students prior to excluding them from the educational
> process. 419 U.S. 565, 576, 95 S.Ct. 729, 42 L.Ed.2d 725
> (1975). The Court held:
>
> > When complete deprivation of education occurs, such
> > as when a student is removed from the school for a
> > lengthy time period, . . . the student at minimum is
> > entitled to "notice and . . . some kind of hearing,"
> > though the "timing and content of the notice and the
> > nature of the hearing will depend on the appropriate
> > accommodation of competing interests involved."
>
> *Id.* at 578–79, 95 S.Ct. 729. Public education is a property
> interest entitled to protection by the Due Process Clause.
> *Goss*, 419 U.S. at 574, 95 S.Ct. 729.

*Ebonie S. ex rel. Mary S. v. Pueblo School Dist. 60,* 819 F.Supp.2d 1179, 1188

(D.Colo.,2011).

Plaintiff analogizes the denial of services to KG necessary to provide a public

education to a school's suspension or expulsion of a student for which *Goss* held due

process is required.  Defendants reject that analogy and argue that "[t]his is a shoehorn

argument made to avoid the reality that Plaintiff has merely an IDEA educational

services based §1983 claim that is barred by Tenth Circuit case law."  *Doc. 23* at 15;

*see Chavez v. Bd. of Educ. of Tularosa Mun. Schs.,* No. CIV 05-380 JB/RLP, 2006 WL 4060667 (D.N.M. Oct. 4, 2006) (comparing affirmative action to exclude a student by suspension or expulsion which requires due process with omissions of special accommodations for an autistic child; "under *Padilla,* a " claim under § 1983 is not available to enforce the IDEA.").  Indeed, in the *Padilla* case, the Tenth Circuit expressly held that "§ 1983 may not be used to remedy IDEA violations."  *Padilla,* 233 F.3d at 1274.

The *Padilla* plaintiff alleged that over the course of five years and at least two different schools, a handicapped child was placed in a windowless closet, restrained in a stroller without supervision and not given the services identified in her IEP.  During a seizure her chair tipped, and she suffered a skull fracture.  The school district also, as alleged here, failed to provide homebound schooling adequate to insure the free appropriate education to which she was entitled."  *Id.* at 1271.  The plaintiff eventually filed suit under the ADA and § 1983.  The Tenth Circuit reversed the trial court's denial of the defendants' motion to dismiss the § 1983 claim and expressly held that "§ 1983 may not be used to remedy IDEA violations."  *Id.* at 1274.

At the oral arguments, I asked Plaintiff's counsel to distinguish the *Padilla* case. She responded that as "master of the complaint," she based her § 1983 due process claim on denial of the *Goss* right to a public education rather than a deprivation of her rights under the IDEA as the *Padilla* plaintiff had alleged.  *See id.* at 1271.  Plaintiff noted that a "master of her complaint," she could identify the right she wished to vindicate, and I am persuaded that the holding in *Padilla* does not mandate dismissal of the due process claims.

### *(2)  Qualified Immunity Analysis*

When a court evaluates an assertion of qualified immunity in a motion to dismiss posture, it accepts "all well-pleaded factual allegations in the complaint as true and viewed in the light most favorable to the nonmoving party" and evaluates whether the complaint contains "sufficient factual matter . . . to state a claim to relief that is plausible on its face."  *Anderson v. Worstell,* No. 11–1327, 2012 WL 3104879, at *2 (10th Cir. Aug. 1, 2012) (internal quotations and citations omitted).  The Court "employs a two part test, considering (1) whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of defendants' alleged misconduct."  *Id.* (same).

Plaintiff bears the burden on both prongs.  *See, e.g., Fisher Sand & Gravel, Co. v. Giron,* 465 F. App'x 774, 779 (10th Cir. 2012) (citing *Dodds v. Richardson,* 614 F.3d 1185, 1191 (10th Cir. 2010), *cert. denied,* 131 S. Ct. 2150 (2011)).  "If the plaintiff fails to satisfy either part of this two-part inquiry, the court must grant the defendant qualified immunity."  *Id.* (quoting *Hesse v. Town of Jackson, Wyo.,* 541 F.3d 1240, 1244 (10th Cir. 2008)).

Defendants first argue that in the school context, the procedural due process right to a hearing is cognizable only in the disciplinary arena, as when a student is suspended or expelled.  *See e.g., Watson ex rel. Watson v. Beckel*, 242 F.3d 1237 (10th Cir. 2001)(expulsion); *see also Couture v. Bd. of Educ. of Albuquerque Pub. Schs.,* 535 F.3d 1243, 1257 (10th Cir. 2008) (temporary "timeouts" during school hours which "balance[] the need for punishment and discipline" result in "de minimus" infringement of any protected due process right).  District Judge James O. Browning addressed that

issue in the *Chavez* case cited above.  In the context of providing services for autistic

students, he apparently agreed with Defendants' position:

> The Plaintiffs have failed to allege a deprivation of life, liberty, or
> property.  If the Plaintiffs had alleged that Garcia affirmatively acted
> to exclude Matthew from school, such as by suspension or
> expulsion, the Court's decision might be different. The Plaintiffs,
> however, rather than alleging that Garcia acted to deprive Matthew
> of his public education, argue that Garcia's omissions, namely her
> refusal to form a program to actively monitor and support Matthew's
> educational progress vis-a-vis his non-autistic peers, effectively
> amounted to a deprivation of due process because they kept
> Matthew from receiving special accommodation for his autism.
> Because "the Due Process Clause 'generally confer[s] no affirmative
> right to governmental aid, even where such aid may be necessary to
> secure life, liberty, or property interests of which the government
> itself may not deprive the individual,'" Garcia's omissions did not
> violate Matthew's right to procedural due process.

Chavez v. Board of Educ. of Tularosa Mun. Schools  2006 WL 4060667, 5

(D.N.M.) (D.N.M.,2006).  Because there is no allegation that services were not provided

to KG for disciplinary purposes, Defendants named in their individual capacities argue

that they are entitled to qualified immunity.  *See Doc. 9* at 22-23.

   The Court has "discretion to determine which prong to address first in light of the

circumstances in the particular case at hand."  *Anderson,* 2012 WL at *2 (internal

quotations and citations omitted).  Here, the "clearly established" prong" is dispositive

on the procedural due process claim.

> "Ordinarily, in order for the law to be clearly established,
> there must be a Supreme Court or Tenth Circuit decision on
> point, or the clearly established weight of authority from
> other courts must have found the law to be as the plaintiff
> maintains."  *Klen v. City of Loveland, Colo.,* 661 F.3d 498,
> 511 (10th Cir. 2011).  Because the existence of excessive
> force is a fact-specific inquiry, however, "there will almost
> never be a previously published opinion involving exactly the
> same circumstances."  *Casey,* 509 F.3d at 1284.  Thus, we
> have adopted a sliding scale:   "The more obviously

> egregious the conduct in light of prevailing constitutional
> principles, the less specificity is required from prior case law
> to clearly establish the violation."   *Pierce v. Gilchrist,* 359
> F.3d 1279, 1298 (10th Cir. 2004).  In fact, we do not always
> require case law on point.

*Morris v. Noe,* 672 F.3d 1185, 1196-97 (10th Cir. 2012).   "This isn't to say a plaintiff

must always identify a case on point.  Sometimes even a 'general constitutional rule that

has already been established can apply with obvious clarity to the specific conduct in

question.'"  *Wilson v. City of Lafayette,* No. 11–1403, 2013 WL 518558, at * 2 (Feb. 13,

2013) (quoting *Anderson v. Blake,* 469 F.3d 910, 914 (10th Cir. 2006)).

 In other words, a "plaintiff can demonstrate that a constitutional right is clearly

established by reference to cases from the Supreme Court, the Tenth Circuit, or the

weight of authority from other circuits," and there is no need for "precise factual

correspondence between earlier cases and the case at hand."  *Mink v. Knox,* 613 F.3d

995, 1001 (10th Cir. 2010) (internal quotations and citation omitted).  "[G]eneral

statements of the law are not inherently incapable of giving fair and clear warning," and

the right Plaintiff asserts "must only be sufficiently clear that a reasonable official would

understand that what he is doing violates that right."  *Id.* (same).

 The Court agrees with Defendants, however, that even if a procedural due

process right can arise outside the disciplinary context, that right is not clearly

established.  Plaintiff invokes the general property right announced in *Goss* as being

"clearly established."  *See Doc. 21* at 22.  However, as of 2008, the Tenth Circuit noted

that the general right recognized by *Goss* "did not . . . delineate the precise contours of

those protections."  *Couture,* 535 F.3d at 1257.  Absent a decision in a more factually

similar posture, *Goss*'s general constitutional rule as expressed by the Supreme Court

and applied in this Circuit, does not apply with "obvious clarity" to the situation where a student is absent from school reasons other than disciplinary.  Plaintiff does not mention any such case and could not offer one during the oral arguments.

Accordingly, the Court finds that Plaintiff fails to meet her burden of showing a clearly established right of the sort she seeks to enforce here.  The individually-named defendants are therefore entitled to qualified immunity on the § 1983 procedural due process claim.  Because there can be no viable *Monell* municipal or supervisory liability claim in the absence of an underlying constitutional violation, *see  DeAnzona v. City and County of Denver*, 222 F.3d 1229, 1236 (10th Cir. 2000), all claims brought pursuant to §1983 will be dismissed.

### H.  Viability of the State Law Claims Under the New Mexico Tort Claims Act

in *Hicks v. State,* 88 N.M. 588, 544 P.2d 1153 (1975), the New Mexico Supreme Court abolished common law sovereign immunity as a defense in tort claims brought against the state or any of its political subdivision.  In response, the New Mexico legislature enacted the New Mexico Tort Claims Act which grants all government entities and their employees general immunity from tort actions, but waives that immunity in certain circumstances which are set forth in the Act.  *See* § 41–4–4.  Two of those waivers of immunity are implicated here.

### (1)  Claim for Negligent Operation of a Public Building

Plaintiff first invokes NMSA1978 § 41-4-6, which provides a waiver of immunity for "negligence of public employees while acting within the scope of their duties in the operation or maintenance of [a public] building."  In doing so, she relies primarily on *Upton v. Clovis Municipal School* District, 140 N.M. 205, 206 (2006)   As the *Upton* court

noted, "[f]or the waiver to apply, the negligent 'operation or maintenance' must create a dangerous condition that threatens the general public or a class of users of the building."  *Id.* at 208, citing *Espinoza v. Town of Taos,* 120 N.M. 680, 683 (1995).

The *Upton* child died after suffering an asthma attack brought on by excessive exercise demanded by a substitute PE teacher who was unaware of the girl's limitations and special needs.  The complaint further alleged that school employees failed to provide the medical assistance that they had agreed to provide pursuant to the parents' explicit instructions, and such failure was the proximate cause of the child's death.  *See id.* at 208.

The Clovis School District characterized these deficiencies as mere "negligent supervision" creating a risk only for that individual child for which immunity is not waived. *Id.* at 209.  The New Mexico Supreme Court disagreed with the school district's analysis:

> Failure to respond appropriately to an emergency medical situation is a potential threat to every student in school because such a situation can occur at any time, regardless of special health needs. The school's indifference towards Sarah's special medical needs makes it more likely that all similarly situated students were at risk as well. The same policies that led the Uptons to rely on the school's diligence were in place for other at-risk students. This is not a case of action uniquely affecting only one student. The school's failures, if proven, created a dangerous condition for all special-needs children, and with regard to emergency responsiveness, for every student at the school.

*Id.* at 211.  The court therefore found that the Uptons stated a viable claim for negligence in the operation or maintenance of a building.

At oral argument, Defense counsel sought to distinguish *Upton* with the more recent case of *Encinias v. Whitener,* 294 P.3d 1245, 1248 (Ct. App. 2012).  There, the Court of Appeals rejected plaintiff's argument that "the school's negligent execution of its safety policies for patrolling the campus during the lunch period, and the school's failure to keep a suspended student off campus, resulted in his injuries."  *Id.* at 1248. Instead, the court "agree[d] with Whitener that Encinias's claim, although couched in terms of a failure to follow a safety policy, is solely a claim for negligent supervision."  *Id.* at 1249.

I am persuaded that the allegations presented here are more akin to those in *Upton*.  The Complaint alleges that KG's "special health needs" were well known to Defendants, and the school was tasked with meeting those needs in order to provide her, and other special needs students, with a safe environment.  Therefore, the allegations fall within the waiver set forth in § 41-4-6, and the motion to dismiss this claim will be denied

### (2)  Claim for Negligent Operation of a Motor Vehicle

Defendants dispute that the allegations regarding the bus driver's collision with an automobile fall within the waiver set forth in § 41-4-5 for negligent operation of a motor vehicle.  *See* NMSA 1978 § 41-4-5 (waiving immunity for damages resulting from bodily injury, wrongful death or property damages caused by the negligence of public employees . . . in the operation of any motor vehicle, aircraft or watercraft.").  Specifically, Defendants contend that Plaintiff fails to allege a "bodily injury" for a viable claim and that emotional distress is not independently compensable.  *See Doc. 9* at 10-12 (citing to *Castillo v. Alvarez*, No. 30,038, slip op at 4 (Ct. App Jan. 13, 2010)).

Unfortunately, a copy of the *Castillo* opinion was not provided, and I have been unable to locate one.

In her brief, Plaintiff argues that an accompanying "jolt" (which I have not located within the Complaint's allegations) during the collision is sufficient to fall within a "bodily injury" definition. She further relies on other New Mexico cases for extending solely emotional distress injuries within the category of those which are independently compensable under the NMTCA. *See Doc. 21* at 9-11 (citing *Folz v. State*, 110 N.M. 457 (1990) and *Brenneman v. Board of Regents of UNM*, 135 N.M. 68 (Ct. App. 2003)).

The Court will deny the motion to dismiss at this juncture. Defendant may re-raise its arguments in the context of a motion for summary judgment when the factual record regarding any "bodily injury" is better developed and the applicability of the legal authorities is more thoroughly addressed.

Wherefore,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss *(Doc. 9)* is granted in part. The §1983 claims are dismissed with prejudice. In all other respects, the motion is denied.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE